THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JULY 16, 2020

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| | ) | No. 97681-3 |
| Respondent, | ) | |
| v. | ) | En Banc |
| | ) | |
| JOHN W. JACKSON, SR., | ) | |
| | ) | |
| | ) | Filed _____July 16, 2020_____ |
| Petitioner. | ) | |
| | ) | |
| | ) | |

WHITENER, J.—This case concerns the systemic and routine shackling of incarcerated persons without an individualized inquiry into the need for restraints. In 2017, John Jackson Sr. was charged with assault in the second degree, domestic violence, for strangling his fiancée. At every court appearance, Jackson was forced to wear some form of restraints pursuant to jail policy. The trial court did not engage in any individualized determination of whether restraints were necessary for courtroom safety but, instead, filed a consolidated opinion adopting the jail policy for all superior court appearances for all incarcerated defendants. After a jury found Jackson guilty, he appealed, arguing that his constitutional right to due process was

violated when he was forced to wear restraints without an individualized inquiry into their necessity.

The Court of Appeals held that the shackling of Jackson without an individualized inquiry into whether shackles were necessary violated his constitutional rights. However, it also held that this violation was harmless beyond a reasonable doubt, leaving Jackson with a constitutional violation without a remedy.

We affirm the Court of Appeals' holding that the shackling of Jackson in his pretrial hearings without an individualized determination violated his constitutional rights. However, we reverse the Court of Appeals' holding that this violation was harmless. The burden is on the State to prove the harmlessness of the shackling, and the State has not shown the error to be harmless beyond a reasonable doubt. Accordingly, we reverse the Court of Appeals on harmlessness and remand for a new trial with instructions that at all stages of the proceedings, the court shall make an individualized inquiry into whether shackles or restraints are necessary, and for further proceedings consistent with this opinion.

Facts and Procedural History

In June 2017, the State charged Jackson with assault in the second degree, domestic violence, for strangling his fiancée, Darci Black, during an event that occurred on May 25, 2017.

On June 19, 2017, Jackson appeared in court for his first appearance. He was shackled with handcuffs and a belly chain. Immediately after the court appointed a public defender, the public defender filed a stock motion on Jackson's behalf objecting to the use of restraints and shackles and moved for their removal. Jackson's attorney alleged in the motion that the court's use of restraints pursuant to jail policy requiring restraints for all nonjury trial proceedings violated Jackson's due process right to be free from restraint under the Fifth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution. The court declined to rule on the motion to allow the State to respond. Due to the seriousness of the offense, Jackson's two prior domestic violence convictions, and his prior warrant history, the court set bail at $35,000. The court refused to lower this bail amount at both the arraignment and the status hearing.

On July 12, 2017, the trial court held a consolidated motion hearing on all of the restraint-and-removal motions before the Clallam County Superior Court, including Jackson's. Three weeks later, on August 4, 2017, the court issued an opinion for "all restraint/shackling motions currently before the court and [the opinion] reflects the unified position of the Clallam County Superior Court on this issue." Clerk's Papers at 64. The court acknowledged the "safety-related concerns about defendants that would otherwise be held in a secure jail facility being brought into a courtroom unsecured" and "potential problems associated with defendants

3

being so humiliated and distracted by their restraints that it interferes with their ability to communicate with their lawyers." *Id*. at 65. The court granted the defendants' motions "to the extent that the court agrees there are less restrictive means of furthering the compelling government interest of courtroom security" and proposed videoconferencing as a viable alternative to defendants being shackled in court. *Id.* at 65-66. However, the court noted that the target date to implement videoconferencing was over a year later.

Until the implementation of videoconferencing, the court indicated that the policy from the January 2017 opinion was still in effect. Under that opinion, the Clallam County Superior Court adopted the Clallam County Sheriff's Office (CCSO) policies on the restraint and shackling of in-custody defendants appearing in court. These policies are as follows:[1]

| First appearance | "waist chain, cuffs, and leg irons" |
|---|---|
| All superior court hearings, other than trials | "full restraints (waist chain, cuffs, and leg irons)" if "maximum classification"<br>or<br>"waist chain and cuffs" if "minimum or medium custody"<br>And all inmates wear "jail uniform" |
| Trials | "Officer will secure either right or left leg brace on the inmate"<br>Wear jail uniform |
| "Jury trial only" | Leg brace;<br>May wear personal clothing rather than jail uniform |

---

[1] Table source: Pet'r's Suppl. Br. at 3.

On August 21, 2017, the parties proceeded to a jury trial. Pursuant to the CCSO shackling policy, Jackson was fitted with a leg brace for trial. The leg brace was not visible outside of Jackson's clothes; it would lock into position if his leg was straight and could unlock from the straightened position with a release mechanism. Jackson's attorney objected to the use of the leg brace as the court had not made any rulings about security or the need for any type of restraints. The court stated that it felt the "limited security measure" was appropriate and told counsel if Jackson wished to testify, the court would ensure that he made it to the witness box without the jury present to see him "perhaps have some difficulty walking" due to the brace. 1 Verbatim Report of Proceedings (VRP) (Aug. 21, 2017) at 75.

At trial, both Black and Jackson testified to the events that day. Black testified that she and Jackson had driven to a doctor's appointment, and on the way home, they stopped to have sexual intercourse. Jackson became upset, started yelling at Black, and accused her of cheating, which Black denied. Jackson had also ripped her engagement ring off of her finger. Black reassured Jackson she had not cheated, and he calmed down "for maybe 15, 20 minutes." 2 VRP (Aug. 22, 2017) at 316. When Black tried to put her pants on, Jackson pushed her, threatened to kill her, and then began strangling her. Black tried to get up, but Jackson grabbed her throat and "just kept squeezing, saying, die, why don't you F'ing die." *Id.* at 317. After he released Black's neck, Jackson continued screaming at her and threatening to kill her, and

proceeded to strangle her two more times. After releasing her for the third time, Jackson began crying and apologizing. Jackson then drove Black home while threatening to commit suicide. Later that day Black told her sister what had happened, and she went to the hospital for an examination. The doctor who examined her testified that Black had injuries on her neck consistent with being strangled.

After the State rested, defense counsel informed the court that Jackson would be testifying and stated, "[M]aybe we should get him up there first, so we don't have that [leg restraint] issue." 3 VRP (Aug. 22, 2017) at 447. Jackson asked if he had to stand when the jury came in, to which the court asked if it was difficult to stand with the brace on. Defense counsel stated, "[H]e's been doing it, but the brace will be basically on the leg next to them, when he's sitting up there, it's on his left leg."[2] *Id*. at 448. The court told Jackson he did not have to stand for the jury and he could take his oath seated. *Id*. Jackson indicated that the jury "can actually see [the brace]" and "it's gonna be noticeable for them." *Id*. The court told him to "[j]ust stay seated then." *Id*.

As to the events on May 25, 2017, Jackson testified to a vastly different story than Black's testimony. Jackson testified that after they went to the doctor's

---

[2] On appeal Jackson contends that he was prejudiced because he never stood in front of the jury. *See* Pet'r's Suppl. Br. at 3 ("The restraint on Mr. Jackson's leg 'hobbled' him so he could not move or stand during trial."). It appears from the record that Jackson *could* move and *did* stand for the jury, just not when he was on the witness stand.

appointment, Black became irritable on the ride back to her parents' house. When they got to her parents' home, Black went inside but then came back outside, yelling at Jackson and accusing him of cheating on her. They argued for about an hour. Jackson told Black that he was going to leave, and then she started punching him multiple times. Jackson pushed her away and asked her to stop. He then opened the car door and started to walk away. Black then chased him, still yelling at him about his cheating. Her sister then told her to just let him go. Black then apologized to Jackson.

The jury found Jackson guilty. He appealed, alleging that the court violated his constitutional right to due process when he was shackled and restrained pursuant to jail policy without an individualized inquiry into whether the use of restraints was necessary. The Court of Appeals agreed that the trial court violated Jackson's right to due process, both at pretrial proceedings and at trial, when it did not engage in an individualized inquiry into whether Jackson needed to be restrained. However, it held that the errors were harmless. *State v. Jackson*, 10 Wn. App. 2d 136, 143, 447 P.3d 633 (2019). In a concurring opinion, Judge Rich Melnick wrote that while he agreed with the majority's analysis of the current state of the law, he "believe[s] a new look at the appropriate remedy for what appears to be a statewide, systemic violation is warranted." *Id.* at 151 (Melnick, J., concurring). Jackson petitioned this court for review of the determination that the constitutional violations were

harmless, alleging that the Court of Appeals did not apply the constitutional harmless error test correctly. The State cross petitioned for review of the constitutionality of the use of pretrial restraints. We granted review of both the petition for review and the cross petition for review. 194 Wn.2d 1016 (2020).

The Washington Association of Prosecuting Attorneys has filed an amicus brief in support of the State. Two amicus briefs have been filed in support of Jackson—one from the Fred T. Korematsu Center for Law and Equality and Washington Association of Criminal Defense Lawyers, and the other from King County Department of Public Defense, ACLU (American Civil Liberties Union) of Washington Foundation, Washington Defender Association, and Disability Rights Washington (hereinafter Br. of Amici KCDPD et al.).

ANALYSIS

I.      Standard of Review

We generally review alleged constitutional violations de novo. *State v. Lundstrom*, 6 Wn. App. 2d 388, 393, 429 P.3d 1116 (2018), *review denied,* 193 Wn.2d 1007 (2019) (citing *State v. Gresham*, 173 Wn.2d 405, 419, 269 P.3d 207 (2012)). However, because the decision on whether to shackle a defendant is vested within the discretion of the trial court, we review the decision of whether to shackle for an abuse of discretion. *State v. Turner*, 143 Wn.2d 715, 724, 23 P.3d 499 (2001) (quoting *State v. Breedlove*, 79 Wn. App. 101, 113, 900 P.2d 586 (1995)). A trial

court abuses its discretion when its "'decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons.'" *Turner*, 143 Wn.2d at 724 (quoting *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993)).

## II.     A Brief History of Shackling

Dating back to the times of the English common law, there have been restrictions on the use of restraints for incarcerated persons without some individualized inquiry into the need for restraints.

> The prisoner is to be called to the bar by his name ; and it is laid down in our antient books , that, though under an indictment of the highest nature, he must be brought to the bar without irons, or any manner of shackles or bonds ; unless there be evident danger of an escape, and then he may be secured with irons.

4 WILLIAM BLACKSTONE, COMMENTARIES *317 (footnote omitted). However, defendants could be held in chains at the time of their arraignment. *Id*.

In 1897, this court recognized

> [i]t was the ancient rule at common law that a prisoner brought into the presence of the court for trial, upon a plea of not guilty to an indictment, was entitled to appear free of all manner of shackles or bonds, and, prior to 1722, when a prisoner was arraigned or appeared at the bar of the court to plead, he was presented without manacles or bonds, unless there was evident danger of his escape.

*State v. Williams*, 18 Wash. 47, 49, 50 P. 580 (1897). We acknowledged that article I, section 22 of the Washington State Constitution gives a defendant "the right to appear and defend in person" and that this right includes "the use of not only his mental but his physical faculties unfettered, and unless some impelling necessity

9

demands the restraint of a prisoner to secure the safety of others and his own custody, the binding of the prisoner in irons is a plain violation of the constitutional guaranty." *Williams*, 18 Wash. at 51. Although this guaranty to be free from restraints absent an individualized determination has been acknowledged explicitly in this court since the late 1800s, we still see cases, such as this one, where courts are systematically using restraints on all incarcerated defendants.

The problems in the history of shackling in early America are not limited to the courts and incarcerated individuals. As amici KCDPD et al. emphasize in their brief, the use of shackling as a means of control and oppression, primarily against people of color, has run rampant in the history of this country. Br. of Amici KCDPD et al. at 2-6. Shackles and restraints remain an image of the transatlantic slave trade and the systematic abuse and ownership of African persons that has endured long beyond the end of slavery. Shackles and restraints also represent the forced removal of Native people from their homelands through the Trail of Tears and the slave labor of Native people. We recognize that although these atrocities occurred over a century ago, the systemic control of persons of color remains in society, particularly within the criminal justice system.

III.    Constitutionality of Pretrial Shackling

The Court of Appeals held that the pretrial shackling without an individualized determination of need violated Jackson's constitutional rights.[3] We agree and extend the trial protections against blanket shackling policies to pretrial proceedings as well.

To ensure the right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution, "[i]t is well settled that a defendant in a criminal case is entitled to appear at trial free from all bonds or shackles except in extraordinary circumstances." *State v. Finch*, 137 Wn.2d 792, 842, 975 P.2d 967 (1999) (plurality opinion). We now determine that the constitutional right to a fair trial is also implicated by shackling and restraints at nonjury pretrial hearings.

As noted above, the long-standing rule in Washington is that the right to appear and defend in person extends to both mental and physical faculties. This leads to the right "to be brought into the presence of the court free from restraints." *State v. Damon*, 144 Wn.2d 686, 690, 25 P.3d 418 (2001). Further, "[r]estraints are viewed with disfavor because they may abridge important constitutional rights, including the presumption of innocence, privilege of testifying in one's own behalf, and right

---

[3] The Court of Appeals also found that Jackson's *trial* shackling violated his constitutional rights, but the State does not challenge that holding on appeal.

11

to consult with counsel during trial." *State v. Hartzog*, 96 Wn.2d 383, 398, 635 P.2d 694 (1981).

Although restraints implicate important constitutional rights, the right to be free from restraint is not absolute, and trial court judges are vested with the discretion to determine measures that implicate courtroom security, including whether to restrain a defendant in some capacity in order to prevent injury. *Id*. at 396, 400. However, this discretion "must be founded upon a factual basis set forth in the record." *Id*. at 400. "A broad general policy of imposing physical restraints upon prison inmates charged with new offenses because they may be 'potentially dangerous' is a failure to exercise discretion." *Id*. (citing *People v. Guiterrez Duran*, 16 Cal. 3d 282, 545 P.2d 1322, 127 Cal. Rptr. 618 (1976)).

We have identified several factors for a trial court to address when determining if a defendant needs to be shackled:

> "[T]he seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies."

*State v. Hutchinson*, 135 Wn.2d 863, 887-88, 959 P.2d 1061 (1998) (alteration in original) (quoting *Hartzog*, 96 Wn.2d at 400).

Relying on *Deck v. Missouri*, 544 U.S. 622, 125 S. Ct. 2007, 161 L. Ed. 2d 953 (2005), the State argues that restrictions on the use of visible shackles applies only at trial and capital penalty proceedings. In that case, Deck was required to wear "leg irons, handcuffs, and a belly chain" for the penalty phase of his capital trial over counsel's objection, and the jury sentenced him to death. *Id*. at 625. The United States Supreme Court reversed the death sentence and held that the use of visible shackles during the guilt phase of a capital trial is unconstitutional. *Id*. at 633. The Court also held that this right is not absolute, but that the trial court has discretion to make a case specific determination on whether the use of shackles is required for security or other concerns. *Id*. Accordingly, *Deck* requires an individualized determination into whether visible shackles are necessary in the guilt phase of a capital trial. It does not hold that there is no need for an individualized inquiry into the use of shackles in pretrial proceedings.

In contrast, Jackson urges us to follow the Court of Appeals and hold that the bar on shackling without an individualized inquiry also applies to nonjury pretrial proceedings. We agree with Jackson.

In *Lundstrom*, 6 Wn. App. 2d at 391, the Court of Appeals was faced with a different Clallam County case challenging the use of the CCSO blanket shackling policy. In that case, Lundstrom "took exception to the use of pretrial restraints," but the trial court did not respond or hold an individualized inquiry into the use of the

restraints. *Id*. at 395. The Court of Appeals stated that this failure to exercise discretion "effectively deferred the decision to the CCSO policy" and constituted an abuse of discretion and constitutional error under *Hartzog*'s prohibition of general policies of shackling defendants. *Id*. However, because Lundstrom did not request any relief from this constitutional violation, the court ended its inquiry. *Id*. at 395 n.2.

We agree with the Court of Appeals, both below and in *Lundstom*, and hold that the court's failure to exercise discretion constitutes constitutional error. The present case is almost identical to *Lundstrom.* It involves the same Clallam County Superior Court and the same generalized jail policies on shackling. While in the present case the court did hold a motion hearing, the hearing was for multiple defendants, did not include any specific information related to Jackson or any of the other defendants, and the opinion was one that applied to all Clallam County Superior Court cases. This cannot be said to have been an individualized inquiry into the use of restraints, and the adoption of the CCSO shackling policy is a failure by the court to exercise its discretion under *Hartzog*. A trial court *must* engage in an individualized inquiry into the use of restraints prior to every court appearance. Accordingly, we hold that the trial court abused its discretion and committed constitutional error when it required Jackson to be shackled under a blanket jail policy at his pretrial proceedings without an individualized inquiry into its need.

IV.    Harmlessness beyond a Reasonable Doubt

As to the remedy, the parties agree that unconstitutional shackling is subject to a harmless error analysis. Suppl. Br. of Resp't at 9; Pet'r's Suppl. Br. at 14. However, the parties disagree as to whether the State must prove harmlessness beyond a reasonable doubt or whether the defendant must prove prejudice. The State argues that under *Hutchinson*, "'the Defendant must show the shackling had a substantial or injurious effect or influence on the jury's verdict.'" Suppl. Br. of Resp't at 9 (quoting *Hutchinson*, 135 Wn.2d at 888). In contrast, Jackson contends that shackling is "'*inherently prejudicial*'" and "'[t]he prosecution must *affirmatively* prove the error harmless beyond a reasonable doubt.'" Pet'r's Suppl. Br. at 13-14 (second emphasis added) (quoting *State v. Jaquez*, 105 Wn. App. 699, 710, 20 P.3d 1035 (2001), and citing *Finch*, 137 Wn.2d at 859).

In *Hutchinson*, we held, "A claim of unconstitutional shackling is subject to harmless error analysis," but we also opined that "the Defendant must show the shackling had a substantial or injurious effect or influence on the jury's verdict." 135 Wn.2d at 888. However, three years later in another unconstitutional shackling case, *State v. Clark*, we opined that

> [t]he test for harmless error is whether the state has overcome the presumption of prejudice when a constitutional right of the defendant is violated when, from an examination of the record, it appears the error was harmless beyond a reasonable doubt, or whether the evidence against the defendant is so overwhelming that no rational conclusion other than guilt can be reached.

143 Wn.2d 731, 775-76, 24 P.3d 1006 (2001) (citation omitted). Further, two years later in *Damon*, we held a shackling error "will not be considered harmless unless the State demonstrates that the shackling did not influence the jury's verdict." 144 Wn.2d at 692.

We hold that the State bears the burden to prove beyond a reasonable doubt that the constitutional violation was harmless as set forth in *Clark*, 143 Wn.2d at 775-76.[4] In doing so, we disavow *Hutchinson*'s "substantial or injurious effect" test, 135 Wn.2d at 888, because application of the test has resulted in no meaningful remedy for a shackling constitutional violation. What we know now regarding the unknown risks of prejudice from implicit bias[5] and how it may impair decision-making, coupled with the practical impossibility for a defendant to prove whether a jury saw the allegedly hidden restraints or whether the jury or judge was unconsciously prejudiced by the restraints at any point during the case, elucidates what Judge Melnick observed in his concurrence below.

---

[4] We acknowledge that there may be a case where the State can prove that under the *Hutchinson*/*Hartzog* individualized shackling factors that the defendant would have been required to wear restraints. Such a showing may satisfy the State's burden to prove the error was harmless beyond a reasonable doubt. However, the State does not argue here that Jackson would have been shackled under an individualized inquiry, and there is no evidence to so suggest.

[5] *See Preliminary Report on Race and Washington's Criminal Justice System*, 35 SEATTLE U. L. REV. 623 (2012); *see also Jackson*, 10 Wn. App. 2d at 154 (Melnick, J., concurring) (citing Andrew J. Wistrich & Jeffrey J. Rachlinski, *Implicit Bias in Judicial Decision Making: How It Affects Judgments and What Judges Can Do About It*, *in* ENHANCING JUSTICE: REDUCING BIAS 87 (Sarah E. Redfield ed., 2017).

In his concurrence, Judge Melnick identifies at least 14 cases since 2015 in which the defendants' constitutional rights were violated and where the Court of Appeals found the error to be harmless. *See Jackson*, 10 Wn. App. 2d at 152-54 (citing Wash. Court of Appeals oral argument, *State v. Jackson*, No. 51177-1-II (Apr. 8, 2019), at 7 min., 39 sec. through 7 min., 44 sec. (on file with court)). Judge Melnick also highlights the State's concession during oral argument that trial court judges are explicitly choosing not to engage in individualized determinations. *Id*. at 154 (citing Wash. Court of Appeals oral argument, *supra*). This is not only unacceptable under this court's precedent in *Hartzog*, but it creates a culture in which incarcerated defendants are virtually guaranteed to have their constitutional rights violated.

In the present case, the judge, encouraged by the State, did not follow established law prohibiting the use of blanket jail policies and shackling without an individualized inquiry. The State contends, and the Court of Appeals agreed, that "the record was clear that the leg brace could not be seen." Suppl. Br. of Resp't at 11; *see also Jackson*, 10 Wn. App. 2d at 149-50 ("Although Jackson told the court that from the witness stand, the jury could see his leg brace restraint if he was standing, nothing in the record suggests that the jury actually saw or was aware of the leg restraint, in part because Jackson remained seated in the jury's presence.").

However, this characterization of the record is misleading. First, the *only* evidence in the record as to what could have been seen by the jury is Jackson's expressing his concern that the jury *could* see the leg brace when he was seated in the witness box. While his attorney did state that the leg brace was not visible through his clothes, we do not have any indication whether his attorney's observation refers to while Jackson was sitting at counsel table or if this observation changed, as Jackson expressed, when seated in the witness box. These conversations regarding the visibility of the shackles occurred on different days, one at the beginning of trial and the other on the following day when Jackson was set to testify.

Second, Jackson emphasizes that he was the only witness who did not stand for the jury when he was in the witness box, even though he stood for the jury prior to taking the witness box. Further, unlike the other witnesses, Jackson did not stand to take his oath before the jury, and the jury did not see him walk to or from the witness box. This is problematic given the nature of the domestic violence allegations made against Jackson, the clear inferences of dangerousness that can be drawn by the obvious limitations placed on his movement, and the implication of the appearance of disrespect shown by him while not being allowed to stand for the jury. The State argues that it is "purely speculative as to whether the jury became aware Jackson was wearing a leg brace." Suppl. Br. of Resp't at 12. However, it is also purely speculative whether the jury *was unaware* of the leg brace that Jackson

18

expressed *was visible* to the jury from the witness box. This conflicting speculation and the conflicting evidence presented at trial prevent the State from proving beyond a reasonable doubt that the violation was harmless.

Accordingly, because the State cannot prove harmlessness beyond a reasonable doubt, we reverse the Court of Appeals on harmlessness and remand for a new trial with instructions that at all stages of the proceedings, the court shall make an individualized inquiry into whether shackles or restraints are necessary, and for further proceedings consistent with this opinion.

CONCLUSION

We affirm the Court of Appeals in part and reverse in part. We affirm that the trial court committed constitutional error when it did not engage in an individualized inquiry into whether restraints were necessary. Further, we formally adopt the harmless error test from *Clark* and hold that the State failed to prove that the constitutional error was harmless beyond a reasonable doubt. Accordingly, we reverse the Court of Appeals on harmlessness and remand for a new trial with instructions that at all stages of the proceedings, the court shall make an individualized inquiry into whether shackles or restraints are necessary, and for further proceedings consistent with this opinion.

Whitener, J.

WE CONCUR.

Stephens, C.J.

González, J.

Johnson, J.

Gordon McCloud, J.

Madsen, J.

Yu, J.

Owens, J.

Montoya-Lewis, J.

20