IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37435-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JAVIER CHAVEZ, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Javier Chavez was convicted at a bench trial of two felony violations of a no-contact order. We affirm.

FACTS

During fall of 2018, a domestic violence no-contact order (NCO) prohibited "Javier Chavez from contacting or coming within 200 feet of Patricia Reyes." Clerk's

Papers (CP) at 15; *see* Ex. 1 at 2. Mr. Chavez and Ms. Reyes "had been romantically involved and had multiple children in common." CP at 15. The NCO listed Ms. Reyes as residing at an address in Pasco, Washington. A previous NCO had listed Ms. Reyes's address as a residence on Jadwin Avenue in Richland, Washington.

On or around October 25, 2018, Mr. Chavez and Ms. Reyes were both present at the Jadwin Avenue home. Mr. Chavez knew he was at the same home as Ms. Reyes. They argued. Mr. Chavez contacted his pastor, and "went to the hospital" after his pastor arrived at the home. *Id*. Police responded to the home following Mr. Chavez's departure. When the police contacted Ms. Reyes at the house, she lied and said Mr. Chavez had not been present.

On November 20, 2018, Mr. Chavez and Ms. Reyes were again together at the Jadwin Avenue address. Ms. Reyes's oldest daughter ran over to a neighbor's home and complained Ms. Reyes was out of control and in violation of her own restraining order.[1] The police arrived and arrested both Mr. Chavez and Ms. Reyes. Ms. Reyes subsequently pleaded guilty to violation of a restraining order.

The State charged Mr. Chavez with two felony violations of the NCO for the incidents of October 25, 2018, and November 20, 2018. Just before the start of

---

[1] Ms. Reyes had been restrained from contacting her oldest daughter.

Mr. Chavez's bench trial, the prosecutor asked the court for permission to "switch tables."
1 Report of Proceedings (RP) (Dec. 16, 2019) at 4. The prosecutor explained Ms. Reyes
was "[v]ery frightened of [Mr. Chavez]" and the switch would prevent her from sitting
"directly across from him." *Id*. Mr. Chavez's defense attorney objected because the
attorney "would rather not be moving" after having sat at the table "for quite a while
waiting for the State to proceed." *Id*. at 4-5. When the attorney did not supply any further
justification to deny the State's request, the court granted the request. It noted "the setup
for this courtroom is not in the best circumstances with respect to the safety of everyone
. . . because of just how the courtroom is designed." *Id*. at 6.

The State presented testimony from Ms. Reyes and her oldest daughter. According
to both witnesses, Mr. Chavez and Ms. Reyes lived together in the Jadwin Avenue home
during the fall of 2018. Ms. Reyes explained she lied about moving to Pasco because she
did not want the NCO and did not want Mr. Chavez to get in trouble.

Mr. Chavez's defense was based on the claim that Ms. Reyes had moved out of
the residence and she was the one responsible for any unauthorized contact. Mr. Chavez
testified that his contact with Ms. Reyes on October 25 and November 20 was inadvertent
and he did his best to avoid contact with Ms. Reyes. During his testimony, Mr. Chavez
stated he was tired of Ms. Reyes coming to the Jadwin Avenue home without permission.

3

He claimed Ms. Reyes was "chasing" him and the situation "wasn't fair." RP (Dec. 17, 2019) at 39-40. On cross-examination, Mr. Chavez agreed he felt he was "somewhat" "the victim" under the circumstances. *Id*. at 52.

During summation, the prosecutor focused on contrasting the testimony of Ms. Reyes and Mr. Chavez. He stated, "I think it's clear from the demeanor of the witnesses in this case who has the power in this relationship. Although Mr. Chavez has claimed to be the victim, you can see that Ms. Reyes was emotionally unstable, that she was hurting, that she was struggling." *Id*. at 58-59. The prosecutor continued, "She never wanted to be here . . . . She never tried to get [Mr. Chavez] in trouble. And that's why this situation is so complex." *Id*. at 59. The prosecutor rejected the idea that Mr. Chavez was "a victim of domestic violence." *Id*. The prosecutor later reiterated "the evidence shows that this idea that Mr. Chavez is a victim is a work of fiction." *Id*. at 65.

In rebuttal closing, the prosecutor further opined,

I think the Court can look in there and find credibility in [the witnesses'] testimony by looking at the different facts and circumstances that surround this.
    And I'll testify to this, Judge, the testimony here in trial by Patti Reyes is far more credible than [Mr. Chavez]'s. She admits when she makes mistakes. She says, "Yes, I lied. I lied because I loved him. I wanted to stay with him."
    Here's what [Mr. Chavez] says, "No, I never talked to police. No, no. Officer Fancher, no, I don't know who that is. Well, yeah, I knew they

4

were after me. Yeah, I fled them, but, you know, I didn't want to be there . . . ."

He has a tampering with a witness conviction.[2] There are multiple reasons to doubt his credibility. All those came out on the stand, your Honor.

*Id.* at 71. Mr. Chavez did not object to the prosecutor's arguments.

The trial court made credibility findings regarding Ms. Reyes, her daughter, and Mr. Chavez. It found Ms. Reyes fully credible, and found her testimony partially supported by the credible testimony of law enforcement. The court made mixed credibility findings regarding Ms. Reyes's daughter and Mr. Chavez. Overall, it concluded the "most relevant portion" of the daughter's testimony was credible and Mr. Chavez "admitted to being within 200 feet of [Ms. Reyes] on both occasions." CP at 16. The court determined the State met its burden to show beyond a reasonable doubt that Mr. Chavez knowingly violated the NCO protecting Ms. Reyes and found him guilty of two felony violations of the order.[3]

---

[2] The trial court admitted evidence Mr. Chavez had "a[t] least two prior convictions for violating protection orders." CP at 16; *see* Exs. 3-4 (October 1998 conviction for court order violation); Ex. 5 (four December 2009 convictions for protection order violations); Ex. 7 (March 2004 conviction for protection order violation). It also admitted evidence of Mr. Chavez's 2010 conviction for tampering with a witness. *See* Ex. 6.

[3] The trial court inadvertently referred to the October 25 incident as occurring on "October 23" and "the 23rd day of September" in its findings and conclusions. CP at 15-16; *see id.* at 7.

Mr. Chavez timely appeals.

ANALYSIS

Mr. Chavez argues his conviction should be reversed based on insufficiency of the State's evidence and multiple instances of prosecutorial misconduct. In his opening brief, Mr. Chavez also alleged the court had imposed an illegal sentence. The sentencing allegation has since been withdrawn. We therefore limit our review to Mr. Chavez's two challenges to his conviction.

*Sufficiency of the evidence*

Mr. Chavez argues the State failed to present sufficient evidence to prove he willfully violated the NCO in October and November 2018. Relying on his version of the events in question, Mr. Chavez argues he made every effort to comply with the NCO and did not willfully have contact with Ms. Reyes.

Mr. Chavez's analysis misses the mark as it fails to take into account the applicable standard of proof. We are not triers of fact. When faced with a sufficiency challenge, this court construes the facts in the light most favorable to the State and asks whether a reasonable fact finder could have found the elements of the offense beyond a reasonable doubt. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019)

6

(quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (plurality opinion)),

*cert. denied sub nom. Scanlon v. Washington*, 140 S. Ct. 834 (2020).

Here, the State's evidence was that Ms. Reyes was living at the Jadwin Avenue

residence along with Mr. Chavez on October 25 and November 20, 2018. Accepting this

evidence as true, Mr. Chavez's claim of incidental contact fails. Regardless of whether

Mr. Chavez tried to separate himself from Ms. Reyes after the two came into conflict,

the fact of the shared residence means Mr. Chavez could not have been surprised by

Ms. Reyes's presence. Mr. Chavez's contact with Ms. Reyes was not incidental. It was

the expected result of Mr. Chavez's continued willful presence at the Jadwin residence.

The State amply proved its case.

## *Prosecutorial misconduct*

For the first time on appeal, Mr. Chavez contends the prosecutor committed

several instances of reversible misconduct during trial. Unpreserved claims of misconduct

are generally not fertile grounds for relief on appeal. *State v. Hoffman*, 116 Wn.2d 51,

93, 804 P.2d 577 (1991). In the bench trial context, the burden is even more onerous, as

we presume a trial judge understands the law and will disregard inadmissible matters.

*See State v. Miles*, 77 Wn.2d 593, 601, 464 P.2d 723 (1970).

Mr. Chavez's first claim of misconduct pertains to the prosecutor's request to have the parties switch tables during trial. We find no impropriety. The prosecutor had a tenable basis for making the request and the court had authority to arrange for courtroom security. *See State v. Jackson*, 195 Wn.2d 841, 852, 467 P.3d 97 (2020). We note judges are often privy to information about a defendant's background that would never be shared with a jury. For example, a judge may rule on bail decisions, issue a pretrial restraining order, or set conditions for accommodating incarcerated litigants. Such involvement is normal. It does not render a judge incapable of impartial adjudication. This case is no different. The prosecutor did nothing wrong in asking the court to have the parties switch seats for safety reasons. Mr. Chavez's misconduct claim fails.

Second, Mr. Chavez claims the prosecutor engaged in improper vouching when he stated, "I'll testify to this, Judge, the testimony here in trial by Patti Reyes is far more credible than the [Mr. Chavez]'s." RP (Dec. 17, 2019) at 71. The prosecutor's use of the word "testify" was unfortunate; however, we find no misconduct. Reviewed in context, it is apparent the prosecutor was arguing about Ms. Reyes's credibility. He was not personally vouching for Ms. Reyes's veracity. Given this was a bench trial, there was no reasonable danger the trial court might have been confused about the nature of the prosecutor's comments.

Mr. Chavez's next claim is that the prosecutor improperly asked Mr. Chavez about the pendency of unrelated charges involving Ms. Reyes's daughter. According to Mr. Chavez, the prosecutor's question improperly implicated his right to silence under the Fifth Amendment to the United States Constitution. Regardless of the merits of Mr. Chavez's claim, we find no prejudice. At trial, the court sustained an objection to the prosecutor's question about Mr. Chavez's conduct. As a result, Mr. Chavez only affirmed that there was an "allegation" he had assaulted Ms. Reyes's daughter. RP (Dec. 17, 2019) at 51. Mr. Chavez was never compelled to testify against himself in an unrelated matter and no prejudicial information was conveyed to the court. While the prosecutor's question about Ms. Reyes's daughter may not have been relevant, the question and Mr. Chavez's brief answer had no bearing on the merits of the case or the trial court's ultimate verdict.

Finally, Mr. Chavez argues the prosecutor improperly expressed an opinion on credibility when the prosecutor argued Mr. Chavez was not a victim of Ms. Reyes's domestic violence. We disagree with this assessment. The prosecutor's comments were proper argument, aimed at Mr. Chavez's testimony suggesting he was the victim of Ms. Reyes's misconduct. There was no misconduct.[4]

---

[4] Mr. Chavez also argues his conviction should be reversed based on multiple instances of prosecutorial misconduct. Because we do not find multiple errors, we reject this claim.

9

CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, C.J.

WE CONCUR:

_____
Fearing, J.

_____
Staab, J.