IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>JOSE LUIS JUAREZ,<br><br>Appellant. | No. 82181-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — The State charged Jose Juarez with second degree assault with a deadly weapon. He refused to leave his jail cell to attend his trial call and pretrial hearing, so jail staff brought him into the court in a restraint chair. After reviewing information concerning the situation, the trial court determined that Juarez should remain restrained for the rest of that hearing, but not at later hearings or trial. The jury found him guilty. Juarez appeals. For the reasons discussed below, we affirm.

## I. BACKGROUND

Leonel Valenzuela Rivera parked his van on the street with a "For Sale" sign. Later, Valenzuela Rivera and his son noticed that the sign was missing and approached the van. They found Juarez sitting inside. Valenzuela Rivera tried to restrain Juarez. Juarez tried to hit Valenzuela Rivera with a multi-tool with a knife, and Valenzuela Rivera grabbed the tool and threw it to the ground. Then Juarez ran away. Law enforcement officers found Juarez walking on the street

Citations and pin cites are based on the Westlaw online version of the cited material.

and took him into custody, and Valenzuela Rivera's son identified him. The State charged Juarez with second degree assault with a deadly weapon.

On the morning of his trial call, Juarez refused to leave his jail cell and appear. During the trial call, without Juarez, the State and defense counsel said they were concerned about his mental health. Defense counsel said, "It might make sense to have a brief hearing this afternoon so the Court can get eyes on him, I can get eyes on him, and we can all do an assessment about whether we should bother to bring in a jury." The trial call judge assigned the case to a different judge for trial.

Later that day, the State moved for a "drag order." The trial court entered the order, which stated, "IT IS HEREBY ORDERED that Snohomish County Jail staff shall use whatever reasonable means necessary to transport the defendant to a hearing in the above captioned case before the Snohomish County Superior Court." Jail staff brought Juarez into the courtroom in a restraint chair for a pretrial hearing on competency and evidence motions.

At the beginning of the hearing, the trial court acknowledged that Juarez "appears in what I am familiar with as a restraint chair" and that there were "three custody officers here in the courtroom." The trial court said that to keep Juarez in restraints during the hearing, it needed to make individualized findings about why the restraints were necessary.

Defense counsel said,

On my client's behalf, of course, I prefer to see him released from restraints and demonstrate to you that they are not necessary. I, of course, wasn't present when the decision was made to put him in

2

these restraints. I had a brief chance to communicate with him just prior to today's hearing while he was in the chair, and he indicated to me that he understands the importance of decorum and self-control. He understands why I want him to demonstrate those behaviors.

I wasn't present for whatever caused the correction officers' concern. Every time I have spoken to him, he's been cordial and he's very deferential to me, basically takes my suggestions. I don't have any personal concerns, but I'm not going to sell the officers short, and I think we should have them say why they made that ruling.

A jail officer told the court what happened before the hearing:

[Juarez] adamantly refused to come out of his cell. He had to be physically taken out of his cell. It took six officers to get him into the chair. So in my 20 years' experience, if you take him out of there with just the three of us, you're going to have an issue.

The court then read a memorandum written by another jail officer that said,

Inmate Juarez refused to comply with directives to attend court today even after being shown a drag order. Transport staff had to enter the cell and physically carry him out. Inmate Juarez took two steps on his own, then dropped his weight, which could have easily injured staff. He refused to walk, so we had to carry him down the stairs. We had to place Inmate Juarez in the restraint chair in order to transport him to court.

The court considered the jail officers' statements, and said, "I do think the Court needs to place emphasis or—there is additional weight that needs to be given that we have three very experienced custody transport officers which all have been on transport for at least a decade, at least as far as my memory goes." It then determined, "At this point, I do think that there has been more than enough evidence presented to support the conclusion that restraints are appropriate in this case for Mr. Juarez." The trial court ordered Juarez to remain restrained during the pretrial hearing stating, "I'm only making a finding for today's purposes."

3

At trial, a jury found Juarez guilty.

Juarez appeals.

## II.    ANALYSIS

Juarez contends the trial court violated his constitutional rights under article I, sections 21 and 22 of the Washington State Constitution and the Sixth and Fourteenth Amendments to the United States Constitution by restraining him during the pretrial hearing without conducting an individualized inquiry.  The trial court conducted an individualized inquiry but did not expressly state its rationale. We conclude that any error was harmless.

Pretrial shackling without an individualized determination of need violates a defendant's rights under the Sixth and Fourteenth Amendments and article I, section 22.  State v. Jackson, 195 Wn.2d 841, 852, 467 P.3d 97 (2020).  We disfavor restraints "because they may abridge important constitutional rights, including the presumption of innocence, privilege of testifying in one's own behalf, and right to consult with counsel during trial."  State v. Hartzog, 96 Wn.2d 383, 398, 635 P.2d 694 (1981).

Trial courts should address these factors to determine whether a defendant needs restraints:

> [T]he seriousness of the present charge against the defendant; defendant's temperament and character; [their] age and physical attributes; [their] past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies.

4

Id. at 400 (quoting State v. Hartzog, 26 Wn. App. 576, 588, 615 P.2d 480 (1980)). Because a trial judge has "broad discretion to provide for order and security in the courtroom," we review its shackling decision for abuse of discretion. Id. at 401.

> A trial court abuses its discretion if its decision to physically restrain a defendant does not rest on "evidence which indicates that the defendant poses an imminent risk of escape, that the defendant intends to injure someone in the courtroom, or that the defendant cannot behave in an orderly manner while in the courtroom."

State v. Madden, 16 Wn. App. 2d 327, 337–38, 480 P.3d 1154 (2021) (quoting State v. Finch, 137 Wn.2d 792, 850, 975 P.2d 967 (1999)).

Here, the trial court did not expressly state which, if any, of the shackling factors it considered. Nor did it expressly address the concerns of escape, intent to injure, or disorderly behavior. However, the trial court did elicit information that concerned Juarez's temperament and apparently about whether he could behave in an "orderly manner." See Hartzog, 96 Wn.2d at 400; Madden, 16 Wn. App. 2d at 337–38. The trial court first heard from defense counsel who said that he briefly talked with Juarez before the hearing, while he was in the restraint chair. Defense counsel said that Juarez indicated that he understood the "importance of decorum and self-control." Defense counsel also said, "Every time I have spoken to him, he's been cordial and he's very deferential to me, basically takes my suggestions. I don't have any personal concerns, but I'm not going to sell the officers short, and I think we should have them say why they made that ruling." Then the court heard from one jail officer and read a statement from another. The officers said that Juarez refused to leave his jail cell, and "refused to comply

with directives to attend court today even after being shown a drag order." They said jail staff had to physically remove Juarez from his cell. They also said Juarez dropped his weight and refused to walk, which could have injured the staff. Juarez required six officers to get him into the restraint chair to transport him to the court.

Regardless of whether the trial court's treatment of the issue sufficed to satisfy Jackson, any error was harmless. "[U]nconstitutional shackling is subject to a harmless error analysis." Jackson, 195 Wn.2d at 855. The State bears the burden to show the shackling was harmless beyond a reasonable doubt. Id. at 856. The State may satisfy its burden of proof by showing that, had the trial court conducted an individualized inquiry where it considered the shackling factors, it would have required the defendant to wear restraints. Id. at 856 n.4; see also State v. Lynn, No. 82543-7-I, slip op. at 5–6 (Wash. Ct. App. Oct. 25, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/825437.pdf (error was harmless in light of factors not expressly considered by trial court, including crime charged and criminal history).[1] We conclude that the trial court would have required restraints if it had applied the shackling factors. And this would have been within the court's discretion.

The record contains information reflecting a risk of disorderly behavior in the courtroom. The shackling factors include the defendant's temperament, the crime charged, and the defendant's criminal record. First, the trial court heard

---

[1] See GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").

from defense counsel.  Then, the trial court elicited information from jail staff about Juarez's behavior and temperament, including the refusal to leave his jail cell and the dropping of his weight, which could have caused injury.  Juarez was charged with a violent crime—second degree assault with a deadly weapon.  Also, Juarez's criminal history includes a 2018 unlawful possession of a firearm conviction and a 2012 second degree assault domestic violence conviction, as well as nine adult misdemeanors and one juvenile felony for attempted residential burglary.  Juarez also had numerous warrants for failure to appear.  Finally, On July 13, 2020, Monroe Municipal Court arraigned Juarez and ordered him not to commit new crimes on release.  About eight days later, Juarez assaulted Valenzuela Rivera.  Given the foregoing, we conclude that, had the trial court conducted an individualized inquiry on the record, applying the shackling factors, it would have made the same decision.

We affirm.

_Chun, J._

WE CONCUR:

_Andrus, A.C.J._

7