# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56218-9-II |
| Respondent, | |
| v. | |
| JEFFERY MICHAEL, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Jeffery Michael appeals his conviction and sentence for child molestation in the first degree. Michael raises several issues on appeal. First, Michael argues that the trial court violated his right to a fair trial because it failed to conduct an individualized inquiry into the need for a stun cuff at pretrial proceedings and at trial. He contends that the constitutional error was not harmless beyond a reasonable doubt. Second, Michael argues that the trial court erred by granting his motion to proceed pro se because his waiver to his right to counsel was not knowing, voluntary, and intelligent. Third, Michael argues that the trial court erred by admitting the victim's hearsay statements to a nurse practitioner because the statements were not made for the purposes of medical diagnosis or treatment. Fourth, Michael contends that the prosecutor committed prejudicial misconduct by introducing irrelevant evidence at trial. Fifth, Michael challenges several community custody conditions, arguing that the conditions are unconstitutional, not authorized by statute, and not crime-related. In a statement of additional grounds (SAG) for review, Michael also requests a remand for an additional competency exam.

We hold that the trial court abused its discretion and thereby committed constitutional error because it failed to conduct an individualized inquiry into the need for the stun cuff at the pretrial hearing and at trial. Because the State fails to meet is burden to show that the constitutional error was harmless beyond a reasonable doubt, we reverse Michael's conviction for child molestation in the first degree and remand for a new trial. Due to the dispositive nature of the constitutional error, we do not reach the remainder of Michael's assignments of error.

## FACTS

I.   FACTUAL BACKGROUND

In February 2019, Michael and Jessica Roberts were in a dating relationship. At the time, Roberts lived at her mother's house.

On February 17, Michael stayed the night with Roberts. Roberts's niece, S.O.,[1] also spent the night at the house. Because S.O. had a nightmare that night, she slept with Roberts and Michael. S.O. stated that during the night Michael had touched her vagina and chest. S.O. also stated that Michael pulled his pants down in the process. When this happened, Michael told S.O. not to tell anyone or else he would hurt her younger cousin.

S.O. did not disclose the touching that night or the following morning because she was scared. S.O. was 10 years old at the time of the incident. Michael was 19 years old.

However, on March 25, 2020, S.O. disclosed the abuse to Roberts, who called the police the next day. On August 17, the State charged Michael with one count of child molestation in the first degree.

---

[1] To protect the privacy interests of S.O., a minor, we use initials.

II.     THE STUN CUFF

At a hearing just prior to trial, staff at the jail where Michael was being held requested that

he remain in a stun cuff for the trial.  The entirety of the discussion concerning the stun cuff is

reproduced below:

> JAIL STAFF: Your Honor?
> THE COURT: Yes?
> JAIL STAFF: The jail has a question about control devices during the trial,
> i.e. restraints.  I understand—we do—he is currently wearing the stun cuff now.  He
> wore the stun cuff during the district court trial with no issues whatsoever.  The jail
> is requesting if he could do that during the superior court trial as well.
> THE COURT: Okay.
> JAIL STAFF: It goes on underneath the pants.  It's not noticeable in any
> fashion.  And just right now it's over the pants because he is—there's no—I mean
> it's over the pants for just ease of application at this point, but during the jury trial
> it would be underneath the jeans that—or clothes that he's wearing and it's not
> noticeable.
> THE COURT: Okay.  And what's the basis for this request?
> JAIL STAFF: He is in custody.  In the event that he tries to take off, escape,
> he can be controlled.
> THE COURT: Okay.
> JAIL STAFF: And we have to keep security of him at all times because he
> is our inmate.
> THE COURT: Okay.  Any position by the State?
> [THE STATE]: No, Your Honor, this is a jail security issue and I'll defer to
> the jail.
> THE COURT: Okay.  As long as the device, which I can see from here
> because it is on the outside of his pant leg at this point, as long as I can be assured
> that that is placed in such a manner where it is not going to be noticeable to the
> jurors, then the Court would not be opposed to this least restrictive approach to
> ensuring safety of the courtroom as well as the potential of fleeing.
> JAIL STAFF: Understood, Your Honor, thank you.

Report of Proceedings (RP) at 111-12.  There is no further mention of the stun cuff in the record.

III.     THE TRIAL, CONVICTION, AND SENTENCE

Michael waived his right to an attorney and proceeded to a jury trial, pro se.  S.O. and

Roberts testified to the events of February 17 consistent with the above facts.

When Michael presented his defense, the trial court directed Michael to "[p]lease come forward" to testify in the jury's presence. RP at 308. Michael provided a narrative testimony of his version of the events. Michael stated that he did not stay with Roberts on the night of February 17. Michael also stated that the allegation was part of a "bad break-up" between him and Roberts and was "their way of trying to get back at [him]." RP at 309.

The jury found Michael guilty of child molestation in the first degree. The court sentenced Michael to a minimum of 60 months to a maximum of life in confinement. Michael appeals.

ANALYSIS

I.      STUN CUFFS

Michael argues that the trial court abused its discretion and committed constitutional error because it required him to wear a stun cuff at the pretrial hearing and at the trial without an individualized inquiry into its need. The State concedes the constitutional error, but argues that the error was harmless beyond a reasonable doubt. We accept the State's concession, but hold that the error was not harmless beyond a reasonable doubt.

A.      The Trial Court Erred by Not Conducting an Individualized Inquiry Before Ordering that Michael Must Wear a Stun Cuff.

We review a trial court's decision to restrain a criminal defendant for an abuse of discretion. *State v. Jackson*, 195 Wn.2d 841, 850, 467 P.3d 97 (2020). "A trial court abuses its discretion when its 'decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons.'" *Id*. (quotation marks omitted) (quoting *State v. Turner*, 143 Wn.2d 715, 724, 23 P.3d 499 (2001)).

A criminal defendant is entitled to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution. *Jackson*, 195 Wn.2d at 852. To ensure the right to a fair trial, "'[i]t is well settled that a defendant

in a criminal case is entitled to appear at trial free from all bonds or shackles except in extraordinary circumstances.'" *Id*. (quoting *State v. Finch*, 137 Wn.2d 792, 842, 975 P.2d 967 (1999) (plurality opinion)). This constitutional right extends to nonjury pretrial hearings. *Jackson*, 195 Wn.2d at 852. "Restraints are viewed with disfavor because they may abridge important constitutional rights, including the presumption of innocence, privilege of testifying in one's own behalf, and right to consult with counsel during trial." *State v. Hartzog*, 96 Wn.2d 383, 398, 635 P.2d 694 (1981).

However, "the right to be free from restraint is not absolute, and trial court judges are vested with the discretion to determine measures that implicate courtroom security, including whether to restrain a defendant in some capacity in order to prevent injury." *Jackson*, 195 Wn.2d at 852. In exercising its discretion, "[a] trial court *must* engage in an individualized inquiry into the use of restraints prior to every court appearance." *Id*. at 854. This inquiry "'must be founded upon a factual basis set forth in the record.'" *Id*. at 853 (quoting *Hartzog*, 96 Wn.2d at 400). The trial court should consider the following factors before ordering the use of restraints in the courtroom:

> "[T]he seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies."

*Jackson*, 195 Wn.2d at 853 (internal quotation marks omitted) (quoting *State v. Hutchinson*, 135 Wn.2d 863, 887-88, 959 P.2d 1061 (1998)). A trial court abuses its discretion and commits constitutional error by requiring a defendant to be restrained without an individualized inquiry into its need. *Jackson*, 195 Wn.2d at 855.

Michael argues that the trial court abused its discretion because it failed to conduct an individualized inquiry into the need to impose the stun cuff. The State concedes the constitutional error. We accept the State's concession.

As an initial matter, while a stun cuff is not necessarily a traditional shackle, hand cuff, or leg brace, it is still a type of physical restraint that Washington courts are concerned with. *See Washington v. Farnsworth*, 185 Wn.2d 768, 788, 374 P.3d 1152 (2016). Indeed, case law is clear that, "in a proceeding before a jury a criminal defendant has a constitutional right to appear *free from restraints or shackles of any kind*." *State v. Walker*, 185 Wn. App. 790, 794, 344 P.3d 227 (2015) (emphasis added). Therefore, the trial court was required to conduct an individualized inquiry as to whether the use of the stun cuff was necessary.

Here, the trial court abused its discretion by requiring Michael to wear the stun cuff at the pretrial hearing and at the trial without an individualized inquiry at each appearance. While the court did ask the jail staff what basis it had to order the use of the stun cuff, the jail responded with generalized concerns of safety and security because Michael was an inmate. Indeed, one can also infer based on the conversation between the court and jail staff that the use of stun cuffs during court proceedings is a standard jail policy for anyone who is incarcerated. The court then failed to conduct any further inquiry addressing the factors set forth in *Jackson*. Instead, the court simply accepted the jail staff's generalized concerns and approved the use of the stun cuff "as long as [it] can be assured that [the device] is placed in such a manner where it is not going to be noticeable to the jurors." RP at 112. But visibility only addresses one concern. The court was nevertheless required to engage in the analysis rather than acquiescing to jail staff's request. Because the court required Michael to wear a stun cuff without an individualized inquiry into its need, the court

6

abused its discretion and committed constitutional error. Accordingly, we accept the State's concession.

Because the trial court abused its discretion by not conducting an individualized inquiry, we must then determine whether the error was harmless beyond a reasonable doubt. *Jackson*, 195 Wn.2d at 855-56. The State bears the burden of proving beyond a reasonable doubt that the constitutional error was harmless. *Id.* at 856.

> B.   The State Fails to Meet its Burden to Show that the Error was Harmless Beyond a Reasonable Doubt

The State argues that the constitutional error was harmless beyond a reasonable doubt because (1) the stun cuff could not be seen by the jury, (2) there is no evidence that the stun cuff caused Michael any difficultly or discomfort, and (3) there is no evidence that the stun cuff had any effect on the trial since it was not mentioned or noticed again after the pretrial hearing. We disagree.

The following harmless error test applies to constitutional violations like that in this case involving restraints:

> "[t]he test for harmless error is whether the state has overcome the presumption of prejudice when a constitutional right of the defendant is violated when, from an examination of the record, it appears the error was harmless beyond a reasonable doubt, or whether the evidence against the defendant is so overwhelming that no rational conclusion other than guilt can be reached."

*Jackson*, 195 Wn.2d at 855 (quoting *State v. Clark*, 143 Wn.2d 731, 775-76, 24 P.3d 1006 (2001)). If the State fails to prove harmlessness beyond a reasonable doubt, then the proper remedy is to remand for a new trial with instructions that at all stages of the proceedings, the trial court shall make an individualized inquiry into whether the use of restraints is necessary. *Id.* at 858.

Here, in an abbreviated argument, the State correctly asserts that there is no evidence that the stun cuff caused Michael any difficulty moving around the courtroom or that it placed him in

any discomfort. Indeed, the record shows that Michael was able to freely walk up to the witness stand when he presented his defense.

However, the State's characterization of the record is misleading because it is not actually clear that the jury could not see the stun cuff. The only evidence in the record as to what could have been seen is the jail staff's representation that the stun cuff *would be* secured underneath Michael's pants during the trial and that it is "not noticeable in any fashion." RP at 112. But the record does not indicate whether this observation would change in the event Michael got up from the counsel table and sat at the witness stand, or if Michael wore different clothes for the trial. In fact, there is no record regarding the layout of the courtroom; i.e. the proximity of the jurors to counsel table and the witness stand; whether or to what degree the jurors could see Michael's legs at counsel table; whether the jurors could see into the witness stand; or whether there were steps leading up to the witness stand. These factors are pertinent because, depending on the layout of the courtroom and clothes that Michael would be wearing at trial, what would be observable by the jury could change. There is also no record about whether the device would protrude from the pants that Michael would wear at trial when his positioning would change. Because the State rests its entire harmlessness argument on the premise that the jury could not have seen the cuff, and because there is no record for each appearance of the layout of the courtroom and the visibility (or lack thereof) of the stun cuff when placed under Michael's pant leg, we hold that the State fails to meet their burden to prove harmlessness beyond a reasonable doubt.[2]

---

[2] Additionally, as Michael points out, "there is no doubt that the *judge* was aware of the restraint." Reply Br. of Appellant at 2. As noted above, the stun cuff was plainly visible from the bench at the pretrial hearing because it was secured to the outside of Michael's pant leg, suggesting, at least that the legs of those sitting at counsel table are visible to the jury. Because of the lack of a record, we are unaware if the trial occurred in the same courtroom as the pretrial hearing, such that Michael's legs were visible to the jury at the counsel table.

Accordingly, we reverse Michael's conviction for child molestation in the first degree and remand for a new trial with instructions that at all stages of the proceedings the trial court shall make an individualized inquiry into whether restraints are necessary.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Glasgow, C.J.

Cruser, J.