IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | No. 82543-7-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| SHANE AMMEL LYNN, | |
| Appellant. | |

SMITH, J. — Shane Lynn fled from police in a stolen vehicle and endangered the officers pursuing him by shooting a flare gun and throwing metal canisters behind him. Lynn was convicted of possession of a stolen vehicle, attempting to elude a pursuing police vehicle, and first degree assault. He appeals, contending that the court violated his constitutional rights by ordering him to wear ankle restraints during trial. Lynn also challenges the court's admission of police testimony opining that he intended to harm them, contends that there was insufficient evidence to support that element of the crime, and claims that the court erred by imposing interest on nonrestitution legal financial obligations. In a statement of additional grounds for review (SAG), Lynn also contends that there was insufficient evidence that he used a "deadly weapon" and that he received ineffective assistance of counsel. We agree that the court erred by imposing restraints, but conclude that this error was harmless beyond a reasonable doubt. We affirm but remand to strike the interest provision.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

On June 28, 2018, Shane Lynn was sitting in a stolen pick-up truck outside someone else's home.  A patrol vehicle approached, flashing its overhead lights.  Lynn sped away, first crashing into a carport and then a fence before continuing on.  He was pursued by two Mason County Sheriff officers in two separate cars, Sergeant Kelly LaFrance and Deputy Nathan Anderson.  Sergeant LaFrance and Deputy Anderson followed Lynn at a distance of about 50 feet, going 70 to 80 miles per hour.  While they pursued him, Lynn was swerving through lanes of traffic and threw at least one paint can and two metal 12 to 14 inch propane canisters behind him at Sergeant LaFrance.  The propane canisters hit the ground, bounced, and exploded in a burst of smoke that Sergeant LaFrance and Deputy Anderson had to drive through.  As the chase continued, Lynn also fired two rounds from a flare gun at Sergeant LaFrance.

The State charged Lynn with second degree assault, possession of a stolen motor vehicle, attempting to elude a police vehicle, and unlawful possession of a firearm.  Lynn waived his right to a jury trial.  The State then amended the information to drop the firearm charge and add a first degree assault charge, and the case proceeded to a bench trial.

At the onset of trial, the jail where Lynn was being held requested that Lynn remain in restraints, on the grounds that Lynn was serving a sentence from a previous felony, that the court had already seen Lynn in restraints, and that it was a bench trial.  The court ordered the jail to remove Lynn's arm restraints but not his ankle restraints to ensure courtroom security.

2

ANALYSIS

Shackling at Trial

Lynn first contends that the court violated his constitutional rights by ordering him to be shackled and restrained at trial.  We agree but conclude that the error is harmless beyond a reasonable doubt.

The right to a fair trial requires that a criminal defendant may "'appear at trial free from all bonds or shackles except in extraordinary circumstances.'" State v. Jackson, 195 Wn.2d 841, 852, 467 P.3d 97 (2020) (quoting State v. Finch, 137 Wn.2d 792, 842, 975 P.2d 967 (1999)).  "Restraints are viewed with disfavor because they may abridge important constitutional rights, including the presumption of innocence, privilege of testifying in one's own behalf, and right to consult with counsel during trial."  State v. Hartzog, 96 Wn.2d 383, 398, 635 P.2d 694 (1981).  This right extends to bench trials, in part because even though a judge may be aware the defendant is incarcerated, there is a "practical impossibility for a defendant to prove whether a . . . judge was unconsciously prejudiced by the restraints at any point during the case."  Jackson, 195 Wn.2d at 856.

However, "the right to be free from restraint is not absolute, and trial court judges are vested with the discretion to determine measures that implicate courtroom security, including whether to restrain a defendant in some capacity in order to prevent injury."  Jackson, 195 Wn.2d at 852.  This "discretion must be founded upon a factual basis set forth in the record.  A broad general policy of imposing physical restraints upon prison inmates charged with new offenses

3

because they may be 'potentially dangerous' is a failure to exercise discretion." Hartzog, 96 Wn.2d at 400. Thus, an "individualized inquiry" into the use of restraints is required. Jackson, 195 Wn.2d at 854. The court should consider:

> [T]he seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies.

State v. Hutchinson, 135 Wn.2d 863, 887-88, 959 P.2d 1061 (1998) (quoting Hartzog, 96 Wn.2d at 400), abrogated on other grounds by Jackson, 195 Wn.2d at 467.

Because the trial court has "broad discretion to provide for order and security in the courtroom," we review its decision for abuse of discretion. State v. Hartzog, 96 Wn.2d 383, 401, 635 P.2d 694 (1981). If the court did abuse its discretion, "the State bears the burden to prove beyond a reasonable doubt that the constitutional violation was harmless." Jackson, 195 Wn.2d at 856. A showing that the court would have required restraints if it had applied the factors "may satisfy the State's burden." Jackson, 195 Wn.2d at 856 n.4.

Here, the trial court abused its discretion by requiring Lynn to wear ankle restraints at trial. The court acknowledged that it needed to make a specific finding that "this individual defendant . . . places a risk to the courtroom," but then ordered Lynn to remain in ankle restraints purely on the basis of its perfunctory finding that "we are in a courtroom that is very difficult to be secure." The court

failed to ground its decision in "a factual basis set forth in the record." Hartzog, 96 Wn.2d at 400. It did not reference anything about Lynn that might pose a risk in the courtroom and did not explain whether there was anything specific about the courtroom that was difficult to secure. Restraining defendants on the basis that courtrooms in general are difficult to secure clearly thwarts the requirement that defendants appear without restraints "except in extraordinary circumstances." Jackson, 195 Wn.2d at 852. The court here "'effectively deferred'" its decision to the jail policy, which is a failure of the court to exercise the required discretion. Jackson, 195 Wn.2d at 854 (quoting State v. Lundstrom, 6 Wn.2d.388, 391, 429 P.3d 388 (2018).

However, we hold that the State has met its burden to establish that this error was harmless beyond a reasonable doubt. The court did order Lynn's arm restraints to be removed so as to not hamper his "ability to best deal with this matter, be able to converse with his attorney, [or] be able to write." Because the restraints would be less conspicuous, and the trial was before a judge (who knew Lynn was incarcerated) instead of a jury, the possibility for unfair prejudice was minimized. Most importantly, an individualized inquiry would justify restraining Lynn. Lynn was on trial for first degree assault against a law enforcement officer and attempting to elude a pursuing police vehicle with an enhancement for endangering third parties. Lynn also had substantial prior criminal history, multiple pending cases in Washington, including a charge of first degree theft, and two warrants for his arrest from other jurisdictions. Given this evidence, the court would have been justified in restraining Lynn on the grounds that there was

a risk he might try to escape and could pose a danger to individuals in the court room if he did so. Accordingly, although the court failed to protect Lynn's constitutional rights when it acquiesced to the jail's request, the error in this particular case was harmless.

<u>Opinion Testimony</u>

Lynn next contends that the court erred by admitting opinion testimony as to Lynn's intent to do substantial bodily harm. We conclude that Lynn invited some of this testimony, failed to object to any of it, and has failed to meet his burden to show manifest constitutional error.

The doctrine of invited error "prohibits a party from setting up an error at trial and then complaining of it on appeal." <u>State v. Pam</u>, 101 Wn.2d 507, 511, 680 P.2d 762 (1984). Furthermore, an appellant loses the right to raise a claim of error that they did not object to below, but may regain that right if it is a "manifest error affecting a constitutional right." RAP 2.5(a). "To meet RAP 2.5(a) and raise an error for the first time on appeal, an appellant must demonstrate (1) the error is manifest, and (2) the error is truly of constitutional dimension." <u>State v. O'Hara</u>, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). "'Manifest' in RAP 2.5(a)(3) requires a showing of actual prejudice." <u>State v. Kirkman</u>, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). "'Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case.'" <u>State v. WWJ Corp.</u>, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999) (quoting <u>State v. Lynn</u>, 67 Wn. App. 339, 345, 835 P.2d 251 (1992)).

Here, the first piece of testimony that Lynn challenges is from his counsel's cross-examination of Deputy Anderson. Counsel asked, "[d]id it appear that the defendant was specifically aiming for windshields, or was he just chucking stuff out the side of the vehicle?" Deputy Anderson responded, "I believe that he's aiming for the person in law enforcement in any way, Sir." Any error here was invited. Counsel asked the officer to opine as to where Lynn was aiming, and the officer responded. Therefore, Lynn is barred from raising this issue on appeal. Pam, 101 Wn.2d at 511.

The other testimony challenged by Lynn was not invited. First, Deputy Anderson testified during the prosecutor's direct examination that "[t]he person driving that same vehicle that we were just pursuing was actively trying to harm us as we were pursuing it." Second, when defense counsel asked Sergeant LaFrance if she thought the propane tank would come through her windshield, she answered, "I was thinking oh, my God, this guy is . . . doing anything possible to hurt myself [and] Deputy Anderson, so he can get away." Though Lynn did not invite the witnesses to testify about their beliefs regarding his intent, he did not object to the testimony either so the burden is on him to show that its admission was a manifest error affecting a constitutional right.

Lynn cannot meet this burden. "[I]n the absence of evidence to the contrary, we presume the judge in a bench trial does not consider inadmissible evidence in rendering a verdict." State v. Read, 147 Wn.2d 238, 242, 53 P.3d 26 (2002). Here, there is no evidence indicating that the judge considered this opinion testimony. Its findings regarding whether Lynn intended to inflict great

bodily harm focus on the results of throwing the first and then the second propane tank and do not mention the officers' belief that Lynn was trying to harm them. Lynn contends that the court relied on the opinion testimony because it found that he shot the flare gun "directly at Sergeant LaFrance" and threw the propane tank "at Sergeant LaFrance's patrol car." However, the issue here is testimony about Lynn's intent to cause harm, which is distinct from evidence about where Lynn was aiming.[1]

We therefore hold that Lynn failed to meet his burden to show manifest constitutional error and may not challenge this testimony on appeal.

### Sufficiency of the Evidence

Through counsel and in his SAG, Lynn contends that there was insufficient evidence to support the court's finding that he intended to inflict great bodily harm. In his SAG, Lynn also contends that there was insufficient evidence that the propane tank was a deadly weapon. We disagree.

The crime of first degree assault requires proof that the defendant, (1) with intent to inflict great bodily harm, (2) assaulted (3) another (4) with a firearm or any deadly weapon. RCW 9A.36.011. "Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements proved beyond a reasonable doubt." State v. Pierre, 108 Wn. App. 378, 383, 31 P.3d 1207 (2001). We "defer to the trier of fact on issues of conflicting testimony, credibility

---

[1] As noted, even if the testimony about where Lynn was aiming was inadmissible, Lynn invited that testimony.

of witnesses, and the persuasiveness of the evidence." State v. Fiser, 99 Wn. App. 714, 719, 995 P.2d 107 (2000).

    1. Intent

Lynn claims that the State failed to prove that he intended to inflict great bodily harm. To establish intent to inflict great bodily harm, "[i]t is not sufficient merely to prove the defendant intended to act in a way likely to bring about the specific result." State v. Mancilla, 197 Wn. App. 631, 647, 391 P.3d 507 (2017). However, while specific intent may not be presumed, "it can be inferred as a logical probability from all the facts and circumstances." State v. Wilson, 125 Wn.2d 212, 217, 883 P.2d 320 (1994). "In satisfying its burden of proving intent, the State is entitled to rely on circumstantial evidence." Mancilla, 197 Wn. App. at 649.

Here, the testimony at trial established that as police followed Lynn at a distance of about 50 feet, going 70 to 80 miles per hour, Lynn shot a flare gun, threw paint cans and two dense propane tanks at them. The propane tanks ruptured when they were thrown out of the window, went "spinning all over the place" and bounced in such a way that they could have gone through Sergeant LaFrance's patrol car window. Furthermore, at the speed the cars were going, it appeared that the projectiles would have shattered the windshield of the patrol car and could easily have resulted in a wreck. In making its findings on intent, the court considered the effect of Lynn throwing the first propane tank, "with the results being obvious as the propane tank ruptured and Sergeant LaFrance drove through the cloud of gasses." It then determined that based on this, when

Lynn threw the second tank, again at speeds of 70 to 80 miles per hour, there was no reasonable doubt that Lynn intended to inflict great bodily harm. This finding is supported by sufficient evidence because a reasonable fact finder could reach this conclusion. Lynn continued to throw several different projectiles behind him at high speeds and they ruptured, bounced, and almost hit the police cars, which would have caused substantial bodily harm. Thus, his intent "can be inferred as a logical probability from all the facts and circumstances." Wilson, 125 Wn.2d at 217.

In his SAG, Lynn disagrees and notes that the court misstated some of the facts in its findings. The court stated that Lynn's firing of the flare gun directly at Sergeant LaFrance was evidence that Lynn was trying to harm her, and that this was followed by the first propane tank, which established a likelihood that Lynn intended to inflict great bodily harm, and that by the second propane tank there was no reasonable doubt of this intent. However, the record shows that Lynn threw the paint can and propane tanks first, and then shot the flare gun afterward. This misstatement on the court's part does not change our analysis. Viewed in the light most favorable to the State, the evidence is still sufficient to support the court's finding, given the effects of the first propane tank followed by the second one. Furthermore, the court did not mention the paint can in its finding on this issue, which is additional circumstantial evidence of Lynn's intent.

2. Deadly Weapon

In his SAG, Lynn also contends that there was insufficient evidence to establish that the propane tanks were "deadly weapons."

A deadly weapon includes any "weapon, device, instrument, article, or substance, . . . which, under the circumstances in which it is used . . . is readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6). Here, the court found that Lynn

> threw out two metal twelve- to fourteen-inch propane tanks in the path of Sergeant LaFrance, who was traveling only fifty feet behind him at the rate of seventy to eighty miles per hour.
> When the propane tanks hit the road, they ruptured and were propelled by the pressurized contents, testified to almost like rockets, spraying out their contents into the path of patrol cars, with some of the contents covering the windshield of Sergeant LaFrance's patrol car. . . .[T]he Court concludes beyond a reasonable doubt that the propane tanks thrown in the path of Sergeant LaFrance's patrol car, considering all the circumstances presented, were used by a force and means that was likely to produce great bodily harm or death to Sergeant LaFrance.[

Lynn does not challenge any of these findings but instead points to other testimony that the patrol vehicle was likely equipped with a standard safety glass windshield. Even assuming standard safety glass could prevent a propane tank from coming through a windshield at 70 miles per hour, there is still testimony that LaFrance thought the propane tank hitting her car would have caused a wreck that would injure her. Given the speeds of this chase, the finding that the propane tanks were deadly weapons in these circumstances is supported by substantial evidence.

<u>Ineffective Assistance of Counsel</u>

Also in his SAG, Lynn alleges that he received ineffective assistance of counsel. We disagree.

11

Lynn first states that his attorney failed to conduct a sufficient investigation. However, he does not point to any specific failure or explain how this insufficient investigation prejudiced him. We do not consider an issue in a defendant's SAG "if it does not inform the court of the nature and occurrence of alleged errors." RAP 10.10(c); see also Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

Lynn next contends that the State amended the information to include a charge of first degree assault after Lynn had already agreed to a bench trial, and that his counsel's failure to object to this rendered Lynn's waiver of his jury trial right "unknowing and involuntary." However, the record shows that Lynn's waiver was made with an awareness that the information would be amended.[2] Lynn's claim is therefore unsupported. See, e.g., State v. Trebilcock, 184 Wn. App. 619, 632, 341 P.3d 1004 (2014) ("The record here amply demonstrates that [the defendant] wanted to waive a jury for all purposes, including determining the aggravating factors alleged, even though her waiver occurred before the information was amended to add the aggravating factors.").

## Interest on Legal Financial Obligations

Lynn claims, and the State concedes, that the court erred by imposing interest on his legal financial obligations. We agree.

---

[2] Prior to Lynn agreeing to waive his jury right, Lynn's counsel informed the court, "in speaking with my client, what we've agreed to do on that is waive jury trial and set this one for a bench trial. And Your Honor, I believe the State is going to be amending the Information in that case to allege - to amend the assault two upward to an assault one."

"As of June 7, 2018, no interest shall accrue on nonrestitution legal financial obligations." RCW 10.82.090. Here, Lynn was convicted in 2019. Nonetheless, the court imposed mandatory nonrestitution legal financial obligations and provided that those obligations "shall bear interest from the date of the judgment until payment in full." This was error and the provision should be stricken. State v. Spaulding, 15 Wn. App. 2d 526, 537, 476 P.3d 205 (2020).

We affirm but remand to strike the interest provision of the judgment and sentence.

_____
Smith, J.

WE CONCUR:

_____          _____
                                 Appelwick, J.