# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55630-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MIGUEL ANGEL MEDEL LOPEZ, | |
| Appellant. | |

CHE, J. — Miguel Angel Medel Lopez appeals his conviction and sentence for first degree child rape and first degree child molestation.

During voir dire of Medel Lopez's trial, no audio record was available and thus no transcript could be created. Almost two-and-a-half-years later, the trial court held a hearing to discuss reconstruction of the record. The hearing was held without Medel Lopez present despite Medel Lopez's counsel objecting to his absence. After the hearing, the trial court judge, trial counsel for the State and for Medel Lopez, and a witness coordinator reconstructed the record of voir dire by creating a narrative report of the proceeding from individual declarations.

Despite recalling some details from voir dire, the individuals could not recall other details from the proceeding, including what was discussed with or in front of prospective jury members, the context of a sidebar held during voir dire, whether Medel Lopez wore leg restraints while appearing before the venire, and to what extent the proceedings were closed to the public.

Medel Lopez argues that the reconstructed record is insufficient to permit effective appellant review and, therefore, he must receive a new trial. He makes additional claims including several claims in a statement of additional grounds (SAG).

We agree that the reconstructed record of voir dire is insufficient to permit effect review. Thus, we reverse Medel Lopez's judgment and sentence and remand to the trial court for a new trial.[1]

FACTS

In December 2020, Medel Lopez was tried on charges of first degree child rape and first degree child molestation.

Medel Lopez's trial occurred under special protocols due to the COVID-19 pandemic. In October 2020, jury selection was held in the Vern Burton Community Center, a converted gymnasium, which was connected to City Hall. Sometime during the morning session of the first day of voir dire, the front doors of the Vern Burton building were locked, prohibiting entrance into the building through those doors. The front doors to the building also had a closed sign.

Prospective jurors completed questionnaires inquiring about potential biases or conflicts they could have in the case. Prospective juror number 28 indicated they had a connection with the courts and the "[a]dministration of justice." Clerk's Papers (CP) at 161. This prospective juror, along with eight others, also indicated that they "[m]ight not be able to try [the] case impartially." CP at 162.

---

[1] Because we reverse and remand for a new trial, we do not reach the merits of Medel Lopez's remaining claims.

Jury selection, which spanned two days, was recorded, but the audio recordings were not available to create a transcript of voir dire.[2] Prospective juror number 28 was impaneled. Another prospective juror who had indicated that they had a connection with courts and the eight others who had indicated that they may not be able to try the case impartially (including those with a higher juror number than 28) were excused. Another juror who marked that they had a connection with "administration of justice" also was impaneled.

A jury convicted Medel Lopez of first degree child rape and first degree child molestation. Medel Lopez appealed.

In October 2021, because there was no record of voir dire, both the State and Medel Lopez's trial counsel drafted declarations of their recollection of voir dire. Besides recalling the setting of voir dire and certain COVID-19 protocols that made it difficult to participate in jury selection, Medel Lopez's trial counsel stated that they "do not have notes from voir dire that would assist in the reconstruction of this record." CP at 123.

The deputy prosecutor remembered that jury selection began mid-morning. They recalled that, after the morning session concluded, the deputy prosecutor became aware of the

---

[2] There is no clear indication in the record why voir dire was not available other than a comment by the transcriptionist in the transcript stating, "This transcriptionist was informed that the [voir dire] proceedings were recorded. However, this transcriptionist was also informed that the audio recordings of these portions of the appeal transcription are unavailable per the Clallam County clerk due to technical difficulties." 1 Rep. of Proc. (RP) (Oct. 5, 2020) at 242-43. It appears that the court commenced voir dire in the gym but returned to the courtroom after jury selection, as the proceedings immediately preceding and following voir dire were transcribed. From comments made during the reconstruction proceeding, it appears that the county did not have any court reporters and relied on the proceeding being recorded and then transcribed. In one of their declarations recalling their recollection of voir dire in this case, defense counsel noted that, at a later trial months after Medel Lopez's trial, jury selection had to move back to the county's courtroom because "the recording system [in the Vern Burton building] simply failed." CP at 123.

sign on the front doors to the building that "indicated City Hall, which is connected to Vern Burton, is closed to the public," and notified defense counsel "in open court" about it. CP at 129. The deputy prosecutor also recalled that the bailiff stated that they would take the sign down. In the reconstructed record, the deputy prosecutor stated,

> I believe, but cannot be certain, that [the judge], who was presiding over the trial, questioned the bailiff regarding whether anyone had attempted to come into Vern Burton and had not been successful and the bailiff said that no one had tried unsuccessfully to get into the building.

CP at 129.

The prosecutor stated that they did not have "any memory of Juror #28, any questions that may have been asked of him, or why I believed he would be a suitable juror in this case." CP at 130. The prosecutor recalled that Medel Lopez's trial counsel concluded voir dire by asking if any jurors had an issue or concern that they thought should be addressed.

The victim witness coordinator also drafted a declaration where they recalled the following. At some point during the first morning session of voir dire, the victim witness coordinator tried to enter the Vern Burton building to deliver documents for the trial but found the front doors locked and noticed a sign on the front doors. The victim witness coordinator could not recall the sign's exact wording.[3] The victim witness coordinator "did not see anyone outside to ask to unlock [the doors]. I knocked on the glass and no one came to the door. I called over to our office to ask what to do and I believe I spoke with [name of] DPA, after trying to call or text a few of the other DPAs." CP at 131. After no more than 10 minutes, a bailiff

---

[3] The trial court clerk's handwritten minutes, which were not made part of the reconstructed record but were part of the appellate record, noted that the sign stated that the Vern Burton building was closed to the public.

came to the doors and let the coordinator into the building. While the coordinator waited

outside, they observed no one from the general public trying to enter. The coordinator could not

remember whether anyone from the general public was observing voir dire but, to the best of

their memory, they did not recall anyone from the general public observing Medel Lopez's trial.[4]

Medel Lopez filed a motion for this court to reverse his conviction for an inadequate

record. Ultimately, we denied his motion without prejudice but placed the burden on the State to

reconstruct the record before considering his appeal.

In March 2023, the trial court judge, trial counsel, and the victim witness coordinator

appeared in open court to discuss their memories of jury selection.[5] Medel Lopez's counsel

objected that Medel Lopez was not present for this hearing.

After the hearing, the deputy prosecutor, Medel Lopez's trial counsel, and the victim

witness coordinator submitted copies of their October 2021 declarations, as well as updates to

those declarations, reflecting their recollection of voir dire. The trial court judge also submitted

a declaration reflecting their recollection of voir dire. The trial court noted that Medel Lopez's

trial counsel "indicated that he had 'no objections to these statements as a reconstruction of the

voir dire'" and that the deputy prosecutor "indicated that he agreed that the declarations were

---

[4] At a prior pretrial hearing, at least two members of the public attended. 1 RP (May 15, 2020) at 85 (noting that Medel Lopez's fiancé and "boss/friend" were in attendance). Medel Lopez's fiancé also attended another pretrial hearing.

[5] At this proceeding, there appeared to be problems with audio, and the transcript reflects 78 times when statements from the participants are "inaudible" or "completely inaudible." *See* 1 Suppl. RP (Mar. 21, 2023) at 5. The transcriptionist noted at the beginning of the transcript, "Audio is very difficult to hear and does not sync with video provided, noted throughout the supplemental record." 1 Suppl. RP (Mar. 21, 2023) at 5.

acceptable and contained no conflicts of consequence." CP at 101. The trial court adopted the declarations as the reconstructed record of voir dire.

The reconstructed record clarified portions of the missing record while leaving other portions uncertain. Overall, the reconstructed record contained no actual attorney questions to the venire or answers but largely contained the trial court's script to prospective jurors before and after the attorneys would normally question the venire and some general aspects of voir dire that the affiants recalled.

The trial court recalled that Medel Lopez attended voir dire dressed in street clothes and unshackled while in the presence of the venire. A retractable curtain separated the venue into two sections: one containing the bench and counsel tables, and the other serving as a gallery for the prospective jurors. When Medel Lopez was escorted into the building by a plainclothes corrections officer, the curtain was drawn closed. No one could recall whether Medel Lopez wore an alternative restraint, like leg braces, during voir dire. The deputy prosecutor recalled, "I know there was a time when some defendants were in trial and they were wearing a leg brace under their pants. Um, but I don't recall if [] Medel-Lopez was one of those defendants or if [] this was post-Jackson[6] and we had stopped that practice." 1 Suppl. Rep. of Proc. (RP) (Mar. 21, 2023) at 31. The trial court judge recalled that no discussion occurred regarding restraints.

The deputy prosecutor's notes from trial indicated that they asked no questions regarding, nor mentioned, Medel Lopez's race, ethnicity, first language, or immigration status during voir dire.

---

[6] Presumably, the deputy prosecutor was referring to *State v. Jackson*, 195 Wn.2d 841, 467 P.3d 97 (2020) (published in July 2020).

At some point during the morning session of voir dire, the trial court held a sidebar at the State's request. Later in the afternoon of the first day, the deputy prosecutor recalled "realizing that a record had not been made and address[ed] the sidebar on the record later in the afternoon." CP at 130. However, no one could remember what was discussed at the sidebar, whether any decision resulted from the sidebar, or what was specifically discussed later when the State wanted to memorialize the sidebar.

The trial court recalled the matter of the sign on the entrance doors being brought to its attention but did not recall knowing that the door was locked.

No one could recall whether any objections to any for cause challenge of a prospective juror occurred, whether the trial court denied any challenge by either party, or what questions were asked, if any, of any juror including prospective juror number 28.[7] The trial court recalled that Medel Lopez accepted the jury panel without exercising all his peremptory challenges.

No one recalled the demographics of the resulting jury, but the deputy prosecutor recalled that no GR 37 or *Batson*[8] challenges were raised.

---

[7] At the hearing on reconstructing the record, the parties appeared to agree that the clerk's handwritten minute entries may not be entirely accurate. The clerk's handwritten minute entries were not made part of the reconstructed record as the parties preferred relying upon their memories and only used the entries as a guide. Accordingly, we do not consider the minute entries as part of the agreed-upon reconstructed record.

[8] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

ANALYSIS

Medel Lopez argues that reversal and remand for a new trial is required because the record of voir dire, even after reconstruction, is inadequate to protect his right to appeal. We agree.

A.      *Legal Principles*

All criminal defendants have a right to appeal. *State v. Waits*, 200 Wn.2d 507, 513, 520 P.3d 49 (2022); WASH. CONST. art. 1, § 22. Accordingly, a defendant is "'constitutionally entitled to a record of sufficient completeness'" to pursue an effective appeal. *Waits*, 200 Wn.2d at 513 (quoting *State v. Tilton*, 149 Wn.2d 775, 781, 72 P.3d 735 (2003)).

However, a verbatim transcript is not necessarily required for there to be a sufficiently complete record. *Waits*, 200 Wn.2d at 513; *see also Tilton*, 149 Wn.2d at 781 ("'A record of sufficient completeness does not translate automatically into a complete verbatim transcript.'") (internal quotation marks omitted) (quoting *Mayer v. City of Chicago*, 404 U.S. 189, 194, 92 S. Ct. 410, 30 L. Ed. 2d 372 (1971)). An alternative method of reporting what occurred at a proceeding is permissible so long as it allows counsel to determine which issues to raise on appeal and "'place[s] before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise.'" *State v. Jackson*, 87 Wn.2d 562, 565, 554 P.2d 1347 (1976) (quoting *Draper v. Washington*, 372 U.S. 487, 495, 83 S. Ct. 774, 9 L. Ed. 2d 899 (1963)).

When a defendant brings an appeal but a record is missing, deficient, or otherwise incomplete, the State bears the burden of providing an alternative. *Waits*, 200 Wn.2d at 518. If

the resulting record is insufficient to permit effective review, the defendant must receive a new trial. *Id.* at 509.

B.       *The State Fails to Show that the Reconstructed Record is Sufficient*

Medel Lopez argues that the reconstructed record is inadequate for his counsel to identify and litigate issues on appeal. Medel Lopez notes particularly potential violations of his right to a public trial due to a courtroom closure and a possible violation of his right to be free from restraints without a determination of their necessity.[9] He also asserts that he cannot identify or argue on appeal unspecified ineffective assistance of counsel or prosecutorial misconduct claims.

In *Classen*, after surveying relevant case law in Washington, we derived four factors to assist in determining whether a reconstructed record is sufficient:

> (1) whether all or only part of the trial record is missing or reconstructed, (2) the importance of the missing portion to review the issues raised on appeal, (3) the adequacy of the reconstructed record to permit appellate review, and (4) the degree of resultant prejudice from the missing or reconstructed record, if any, to the defendant.

*State v. Classen*, 143 Wn. App. 45, 57, 176 P.3d 582 (2008).

---

[9] Medel Lopez also raises a potential issue of juror bias which he claims cannot be resolved on the existing record. Nine prospective jurors indicated that they "[m]ight not be able to try [the] case impartially." CP at 162. All were excused except for prospective juror number 28 who was impaneled. Even after reconstruction, no one can recall what, if anything, was asked of this juror. However, Medel Lopez did not use all his peremptory challenges and accepted the empaneled jury with prospective juror number 28 on it. The State asserts that Medel Lopez has waived a challenge that the prospective juror should have been dismissed because he did not use all his peremptory strikes. A party cannot appeal on the basis that a seated juror should have been dismissed for causes if the party did not use all their peremptory challenges and accepted the empaneled jury. *State v. Talbott*, 200 Wn.2d 731, 737, 747-48, 521 P.3d 948 (2022); *see* Br. of Resp't at 15. Accordingly, the record is sufficient on the grounds of this claim for juror bias because Medel Lopez has waived any claim that the juror should have been excused for cause.

Here, despite there being a verbatim record of proceedings for most of Medel Lopez's four-day trial, no verbatim record of proceedings was available for the entirety of voir dire. A year after voir dire occurred, trial counsel and the victim witness coordinator drafted declarations of their recollection of voir dire; however, their recollections were limited. At that time, neither counsel recalled there being an issue with the doors to the building where voir dire was held being locked, that a sidebar had occurred, or whether any GR 37 or *Batson* challenges were raised at trial. Nor could they recall any specific questions that were asked of jurors and any of the jurors' responses.

Nearly a year and a half later, trial counsel met, along with the trial court judge and the victim witness coordinator, to discuss their recollection of voir dire. Through their discussions, a more detailed recollection of voir dire was created; however, the reconstruction still left large portions of the record uncertain or missing. These uncertain or missing portions of the record are material to the potential issues Medel Lopez identifies on appeal, which are discussed further below.

1.  Public Trial Right Violation

On appeal, Medel Lopez raises a concern that his right to a public trial was violated during voir dire by a court closure and potentially a sidebar.

The state and federal constitutions guarantee defendants the right to a public trial. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. In general, this right requires that a trial court hold certain proceedings in open court

unless the trial court first applies the *Bone-Club*[10] analysis on the record and finds that closure of the courtroom is justified. *State v. Smith*, 181 Wn.2d 508, 520, 334 P.3d 1049 (2014) ("A closure unaccompanied by a *Bone-Club* analysis on the record will almost never be considered justified."). Failure to do so is a structural error. *Wise*, 176 Wn.2d at 16.

It is "'well settled that the right to a public trial . . . extends to jury selection,' . . . including for cause and peremptory challenges." *State v. Love*, 183 Wn.2d 598, 605, 354 P.3d 841 (2015) (internal citations omitted) (quoting *State v. Brightman*, 155 Wn.2d 506, 515, 122 P.3d 150 (2005)). Closures can occur "'when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave'" or when a portion of trial is held someplace inaccessible to spectators. *Id.* at 606 (quoting *Smith*, 181 Wn.2d at 520).

Here, the reconstructed record shows that the Vern Burton building was locked for at least 10 minutes during voir dire. The victim witness coordinator found the outside doors to the building locked and a sign on the door indicating that the building was closed to the public. No one was outside to let the coordinator in and, although the coordinator knocked on the door, someone only let them in after the coordinator had called and texted individuals from the prosecutor's office and around 10 minutes had passed.

While the victim witness coordinator observed no one else outside while they were waiting, they could not recall whether anyone from the general public attended the proceeding. The deputy prosecutor "believe[d], but [could not] be certain," that, when the trial court was made aware of the sign on the door, the trial court questioned the bailiff whether anyone had

---

[10] *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995).

attempted to come into the building but was unsuccessful and the bailiff responded that no one had. CP at 129.

From the reconstructed record, neither party contests that the building doors were locked for a period of time during voir dire, which excluded members of the public (as confirmed by the victim witness coordinator) from entering. The State contends that the facts in the reconstructed record suggest that the alleged closure could be de minimis, citing to *State v. Schierman*, 192 Wn.2d 577, 614, 438 P.3d 1063 (2018) (plurality). However, even the State acknowledges that certain facts not within the reconstructed record could be relevant to whether any closure requires reversal. Br. of Resp't at 21 (noting that factors such as whether the closure was purposeful or inadvertent and the duration of the closure are relevant to determining if a closure was a de minimis error). There is no indication to what extent, the trial court knew of the sign or the locked doors before the State raised the issue and the bailiff removed the sign and, presumably, the door to the building was unlocked. Moreover, the majority opinion in *Schierman*, addressing the right to a public trial claim, noted, "We stress that our current precedent, which today's decision does not disturb, forecloses the possibility of de minimis violations involving juror questioning or witness testimony." *Schierman*, 192 Wn.2d at 613 (opinion of Gordon McCloud, J.). Thus, this record is insufficient to determine this issue.

Additionally, at some point during voir dire, a sidebar occurred and later, to make a record of the earlier sidebar, the State raised the earlier sidebar discussion. Under Supreme Court precedent, "[p]roper sidebars" do not implicate a defendant's public trial right. *State v. Whitlock*, 188 Wn.2d 511, 522, 396 P.3d 310 (2017) (quoting *Smith*, 181 Wn.2d at 516-10 & n.10). Proper sidebars are "proceedings that 'deal with the mundane issues implicating little

public interest, . . . done only to avoid disrupting the flow of trial, and . . . either . . . on the record or . . . promptly memorialized in the record.'" *Id.* (alterations in original) (quoting *Smith*, 181 Wn.2d at 516 & n.10). Thus, the content of the sidebar proceeding and its memorialization on the record determines whether the proceeding implicates a public trial right or not. *Id.* at 516, 522-23 (holding that a requested "sidebar" was not a "proper" one and, thus, implicated a public trial right).

Here, the reconstructed record does not indicate under what circumstances the sidebar occurred, what was discussed in the sidebar, whether any decision resulted, or to what extent the sidebar was later memorialized. Nor does the reconstructed record show that the content of the sidebar was somehow memorialized in the record. Instead, the reconstructed record indicates that the sidebar was not immediately memorialized on the record and was "address[ed] . . . on the record later in the afternoon" after the deputy prosecutor realized it was not memorialized. CP at 130. From this limited recollection, we still cannot assess the topic of the sidebar or whether any memorialization was prompt or sufficient given the sidebar's context. Therefore, the reconstructed record is insufficient to evaluate whether the sidebar was a proceeding implicating Medel Lopez's public trial right and, thus, potentially required the trial court to justify any closure of the proceeding from the public. *See Whitlock*, 188 Wn.2d at 524 (reversing based on the unjustified courtroom closure of an unrecorded, not-sidebar proceeding).

With the deficiencies discussed above, the record is insufficient to review whether the trial court violated Medel Lopez's right to a jury trial by an unjustified court closure.

2. Free from Physical Restraints Violation

Medel Lopez also raises a potential violation of his right to be free from physical restraints absent a finding on the record that restraints were necessary.

Trial courts have the discretion to restrain defendants when courtroom security is implicated; however, in exercising its discretion, the decision to restrain a defendant "'must be founded upon a factual basis set forth in the record.'" *State v. Jackson*, 195 Wn.2d 841, 852-53, 467 P.3d 97 (2020) (quoting *State v. Hartzog*, 96 Wn.2d 383, 398, 635 P.2d 694 (1981)). The trial court must engage in an individualized inquiry into the use of restraints before every court appearance. *Jackson*, 195 Wn.2d at 844. Leg braces, even ones placed under a defendant's clothes, can constitute reversible error if the trial court fails to engage in the required individualized inquiry. *See Jackson*, 195 Wn.2d at 857-58 (remanding for a new trial based on a trial court's failure to make an individualized inquiry into the necessity of leg braces under a defendant's clothes).

Here, the reconstructed record shows that Medel Lopez was not shackled while in the presence of the venire. However, no one could recall whether Medel Lopez wore an alternative restraint during voir dire. And given the deputy prosecutor's comments during the hearing regarding reconstruction where they acknowledged that some defendants wore leg braces under their pants during trial, there is a possibility that Medel Lopez could have been restrained. However, the reconstructed record does not show if Medel Lopez was alternatively restrained and, if he was, there is no indication that the trial court made an individualized inquiry whether such restraints were necessary.

3. Ineffective Assistance of Counsel and Prosecutorial Misconduct

Finally, Medel Lopez argues that a transcript of voir dire is necessary to review a claim of ineffective assistance of counsel or prosecutorial misconduct. We agree.

Medel Lopez's appellate counsel was not the same as his trial counsel, and thus, his appellate counsel's ability to identify whether Medel Lopez received ineffective assistance of counsel at the proceeding or whether the deputy prosecutor committed misconduct is hindered. Medel Lopez's appellate counsel was not present for trial and neither the trial court, trial counsel, nor the victim witness coordinator recalled specifics related to the conduct of either Medel Lopez's or the State's trial counsel. Accordingly, in identifying possible errors on appeal, Medel Lopez is forced to largely depend on trial counsels' memories of their own conduct at the proceeding and assume that no misconduct occurred because neither reported such.

Under the scant reconstructed record, Medel Lopez could be deprived of the ability to appeal based on ineffective assistance of counsel or prosecutorial misconduct. *See State v. Giles*, 148 Wn.2d 499, 450, 60 P.3d 1208 (2003) (involving a claim that trial counsel was ineffective in failing to challenge jurors who had clearly demonstrated bias and holding that "[t]o properly consider [a] claim of ineffective assistance in the jury selection process, it is necessary to review the transcript of the voir dire."); *State v. Zamora*, 199 Wn.2d 698, 704, 711, 512 P.3d 512 (2022) (stating that "what occurs during voir dire is equally as important as what occurs during trial proceedings" and holding that prosecutorial misconduct occurred during voir dire by the prosecutor appealing to juror's potential racial bias); *Waits*, 200 Wn.2d at 522, no. 8 (citing *State v. Tesfasilasye*, 200 Wn.2d 345, 518 P.3d 193 (2022) ("Review of [a case concerning GR 37 and whether race could be seen as a reason a juror was peremptorily struck from the venire] involved a granular examination of juror statements for which a transcript was critically important. It is

hard to imagine that a narrative or agreed report would be sufficient to allow such a case to come before appellant review.").

Both ineffective assistance of counsel and prosecutorial misconduct claims are ones that Medel Lopez can raise for the first time on appeal. However, the record here does not allow Medel Lopez to adequately evaluate whether either his trial counsel or the deputy prosecutor's conduct in voir dire violated his rights.[11] *See State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) ("A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal."); *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012) ("An objection [to alleged prosecutorial misconduct] is unnecessary in cases of incurable prejudice.").

This case presents unique circumstances where, despite the trial court's best efforts to conduct trial proceedings under COVID-19 protocols, the trial court failed to make a record of the jury voir dire proceeding, either through an audio recording of voir dire or a verbatim report of proceedings.[12] Fairly reviewing *Classen*'s factors, the State does not meet their burden to show that the reconstructed record, with the undisputed circumstances that occurred here during voir dire, is adequate to protect Medel Lopez's right to appeal. Accordingly, we reverse Medel

---

[11] The State argues that the reconstructed record is sufficient because the trial court clerk's handwritten minutes reflect all challenges and objections that occurred during voir dire. However, these minutes were not part of the reconstructed record. *See supra* n.7. Additionally, in cases of "incurable prejudice," an objection is not required to present a prosecutorial misconduct claim. *Emery*, 174 Wn.2d at 762.

[12] From the record of the hearing discussing reconstruction, it is clear that the trial court and the parties made a good faith effort to reconstruction the record. We particularly acknowledge the indications in the record that, when voir dire occurred, the trial court and parties made great effort to proceed with timely jury trials while navigating challenges arising due to the COVID-19 pandemic.

Lopez's judgment and sentence, and remand to the trial court for a new trial. In light of our decision, we decline to address Medel Lopez's remaining claims.

CONCLUSION

We reverse and remand for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, P.J.

L. c. J.